# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
No. 08-0307V
Filed: August 6, 2015
Not for Publication

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
HUSSEIN H. HASHI and SAFIA          *
WEGED, parents of S.H.,             *
                                    *       Autism; Dismissal;
              Petitioners,          *       Significant Aggravation;
         v.                         *       Failure to Comply with Court Orders
                                    *
SECRETARY OF HEALTH AND             *
HUMAN SERVICES,                     *
                                    *
              Respondent.           *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Elaine W. Sharp, Esq., Whitfield, Sharp & Sharp, Marblehead, MA, for petitioners.
Heather L. Pearlman, Esq., U.S. Dept. of Justice, Washington, DC, for respondent.

## DISMISSAL DECISION[1]

**Vowell,** Chief Special Master:

On June 1, 2015, I issued findings of fact regarding petitioners' significant aggravation claim. As I had previously dismissed their causation in fact claim because it was untimely filed, *see Hashi v. Sec'y, HHS,* No. 08-307V, 2013 WL 10543716 (Fed. Cl. Spec. Mstr. Aug. 26, 2013), the significant aggravation claim was petitioners' only remaining claim. In my June 1, 2015 fact ruling, I noted that based on my factual findings, "it appears unlikely that any reputable expert can opine that S.H.'s condition was significantly aggravated by the vaccinations administered in January 2007" and remarked that it may "be unreasonable for petitioners to continue to pursue this case." *Hashi v. Sec'y, HHS,* No. 08-307V, 2015 WL 4626089 (Fed. Cl. Spec. Mstr. Jun. 1, 2015), at *15.

---

[1] This ruling will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

Nevertheless, I allowed petitioners 60 days to identify an expert witness willing to opine that the vaccinations significantly aggravated S.H.'s condition. Petitioners' deadline was July 31, 2015. I cautioned petitioners that "[n]**o extensions to this deadline will be granted**." *Id.* (emphasis in original).[2]

Petitioners' counsel untimely filed a status report on August 1, 2015, indicating that she had not heard from her clients about how they wished to proceed in this case, if at all. She did not address what, if anything, she had done to identify an expert,[3] nor when she communicated the fact ruling to petitioners. Regardless of whether petitioners or their counsel are at fault, petitioners have failed to comply with a very explicit and simple order: identify an expert or dismiss their case. They have failed to do either. **This case is thus DISMISSED for failure to comply with court orders.**

### I. Procedural History.

Petitioners Safia Weged and Hussein Hashi ["Ms. Weged," "Mr. Hashi," or "petitioners"] filed the short-form petition authorized by Autism General Order #1[4] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[5] [the "Vaccine Act" or "Program"], on behalf of their minor daughter, S.H. By filing the short-form petition, petitioners joined the Omnibus Autism Program ["OAP"],[6] thereby asserting that S.H. has an autism spectrum disorder ["ASD"][7] and that

---

[2] I note that petitioners' counsel has frequently asked for extensions of time to comply with court orders. Her August 1, 2015 status report includes her 17th request for additional time to submit routine filings in this matter.

[3] Petitioners' counsel had previously communicated with two experts, Drs. Sims and Kinsbourne, according to representations in status reports and other filings. *See* Pet. Status Report, filed Oct. 18, 2011, at 1 (remarking that petitioners' counsel had retained Dr. Sims to review the case and produce an expert report); Pet. Ex. 19 (statement from Dr. Kinsbourne, dated May 27, 2014, requesting an additional 30 days to review S.H.'s case).

[4] The text of Autism General Order #1 can be found at http://www.uscfc.uscourts.gov/sites/default/files/autism/Autism+General+Order1.pdf, 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002).

[5] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[6] The OAP and the effects of joining it are discussed in detail in *Dwyer v. Sec'y, HHS*, No. 03-1202V, 2010 WL 892250, at *3 (Fed. Cl. Spec. Mstr. Mar. 12, 2010). In summary, the OAP created a body of evidence about ASD that could be used to resolve not only the test cases themselves, but all the remaining OAP cases as well. Although the remaining OAP petitioners were not bound by the results in the test cases and remained free to develop and present new evidence and new theories, the OAP evidence could be relied upon by either side in resolving the remaining cases.

[7] "Autism spectrum disorder" is an umbrella term encompassing several neurological disorders manifesting in early childhood with impairments in communication and social interaction, and the display of restricted, repetitive, or stereotypical patterns of behavior, interests, and activities. A more complete description of the disorder is contained in *White v. Sec'y, HHS*, No. 04-337V, 2011 WL 6176064 (Fed. Cl. Spec. Mstr. Nov. 22, 2011).

one or more vaccines listed on the Vaccine Injury Table[8] were causal of her condition. Petitioners did not file any medical records or details regarding S.H.'s injuries with the short-form petition.

On April 28, 2008, the presiding special master ordered petitioners to complete their petition by filing the statutorily required medical documentation[9] and a "Statement Regarding Onset," clearly detailing S.H.'s first symptom or manifestation of onset or significant aggravation of her injury.  Order, issued Apr. 28, 2008.  Respondent filed her Rule 4(c) report on May 20, 2008, noting that petitioners had yet to file any evidence and thus she could not assess the merits of the claim.  Respondent's Report at 4.  By October 25, 2008, petitioners had filed 17 exhibits of medical records,[10] but did not submit a "Statement Regarding Onset."

No further activity occurred in this case until after the conclusion of the appeals in the OAP test cases.  On January 25, 2011, in view of the test case findings of insufficient evidence linking vaccines and autism, petitioners were ordered to inform the court if they wished to proceed with their claim or if they wished to exit the Vaccine Program.  Order, issued Jan. 25, 2011.  Petitioners evinced their intent to proceed and filed an amended petition on June 29, 2011, alleging that one or more of the vaccinations S.H. received between birth and four and a half years of age "caused or exacerbated progressive encephalopathy with autistic features" and the sequelae. Amended Petition ["Am. Pet."] at 2.  The amended petition also alleged that S.H. was later diagnosed with a mitochondrial disorder, specifically a Complex I electron transport chain ["ETC"] deficiency.  *Id.*

This case was reassigned to me on July 1, 2011.  During a status conference held on July 20, 2011, I advised petitioners' counsel that this claim appeared to have been filed outside the Vaccine Act's 36 month statute of limitations.  Order, issued July 20, 2011, at 2.  Subsequently, I cautioned petitioners' counsel against obtaining an expert report, in view of the unsettled state of the law regarding the Vaccine Act's statute of limitations and its effect on payment of fees and costs on unsuccessful cases.[11]  Order, issued November 8, 2011.

---

[8] 42 C.F.R. § 100.3 (2011).

[9] Section 11(c)(2) of the Vaccine Act and Vaccine Rule 2 requires that the petition be accompanied by medical records and affidavits.

[10] The first 17 medical record exhibits were initially filed as Petitioners' Exhibits 13.1-13.10; 14.1-14.3; 15.1; 16.1-16.2; and 17.1  Petitioners had incorrectly correlated the exhibit numbers with the docket entry number (*e.g.,* the exhibit filed in docket entry 15 was labeled as Exhibit 15.1).  Petitioners re-filed these records as Pet. Exs. 1-7 on August 3, 2011.

[11] At the time of this status conference, interpretation of the Vaccine Act's statute of limitations was under review by the U.S. Court of Appeals for the Federal Circuit.  The Federal Circuit, siting *en banc*, heard oral argument in *Cloer v. Sec'y, HHS,* on May 10, 2011.  Because the outcome of that case could affect my determination of timeliness in this case, I opted to wait for the Federal Circuit's decision before ordering petitioners to obtain an expert report.  On August 5, 2011, the Federal Circuit reiterated that the first symptom recognized by the medical community at large as a symptom of a disorder triggered the running of the statute of limitations in Vaccine Act cases.  *Cloer v. Sec'y, HHS,* 654 F.3d 1322 (Fed. Cir.

3

Between October 2011 and April 2012, petitioners filed additional exhibits detailing S.H.'s health from birth through early childhood.  On February 27, 2012, respondent was ordered to file a statement indicating whether, based on the available medical records, she believed petitioners' claim should proceed.

On April 11, 2012, in lieu of filing a statement, respondent moved to dismiss petitioners' claim, asserting that the petition was filed after the expiration of the Vaccine Act's statute of limitations.  Respondent's Motion to Dismiss at 1, 4-5.  Respondent argued that the petition should have been filed no later than November 2, 2007, because the first symptom or manifestation of onset of S.H.'s autism spectrum disorder occurred as early as November 2, 2004.  *Id.* at 2-3, 5.

On July 16, 2012, petitioners filed a joint opposition to respondent's motions to dismiss in both of their children's cases.[12]  Petitioners asserted that the diphtheria, tetanus, and acellular pertussis ["DTaP"] and inactivated polio virus ["IPV"] vaccines administered on January 8, 2007 significantly aggravated S.H.'s pre-existing mitochondrial disorder and therefore the short-form petition filed on April 22, 2008 was filed well within the statute of limitations period.  Petitioners' Response at 2, 5.

On August 26, 2013, I dismissed the causation in fact claim as untimely filed.  *Hashi,* 2013 WL 10543716.  Petitioners elected to proceed on a significant aggravation claim, a claim not made in their original or first amended petition, but first raised in Petitioners' Status Report, filed December 6, 2011, at 2.  The significant aggravation claim was explicitly raised in the second amended petition filed on September 25, 2013.

The second amended petition asserted that vaccines S.H. received on January 8, 2007 significantly aggravated an underlying mitochondrial disorder.  Second Amended Petition, ¶ 6.  As evidence of the significant aggravation, petitioners relied on assertions made by petitioner Hussein Hashi in his affidavit, dated and filed on July 16, 2012.  *See* Pet. Ex. 18.  In dismissing the causation in fact claim and permitting petitioners to proceed on the significant aggravation claim, I noted that Mr. Hashi's affidavit appeared to contradict the contemporaneous medical records regarding S.H.'s condition before and after the January 8, 2007 vaccinations.  *Hashi,* 2013 WL 10543716, at *8, n.24.

To resolve the discrepancies between Mr. Hashi's affidavit and the contemporaneous medical records, I conducted a hearing before ruling on the facts regarding S.H.'s condition.  *See* Order, issued May 29, 2014.  I heard the testimony of Mr. Hashi and Ms. Nimo Hashi, his niece, on September 18, 2014, in a hearing in Boston, MA.  I carefully considered their testimony and ultimately found that the contemporaneous medical records and histories provided by S.H.'s parents at times closer to the events in question more accurately reflect S.H.'s condition than the hearing

---

2011), *cert. denied*, 132 S. Ct. 1908 (2012).

[12] Petitioners had also filed a petition on behalf of their daughter O.H. (No. 08-308V).

testimony and affidavits of the two hearing witnesses. I issued a fact ruling on June 1, 2015, concluding that petitioners have "failed to demonstrate that S.H.'s symptoms and behavior worsened within 18 months of the January 2007 vaccinations." *Hashi,* 2015 WL 4626089, at *15. I provided them with one more opportunity to identify an expert willing to opine that S.H.'s vaccinations did significantly aggravate her condition. *Id.*

My factual findings, both in dismissing petitioners' causation in fact claim and in determining that S.H.'s symptoms and behavior did not significantly worsen after she received the allegedly aggravating vaccinations, contain thorough examinations of the medical records and the testimony provided by petitioners' family members. I adopt those factual findings by reference. *Hashi*, 2013 WL 10543716; *Hashi,* 2015 WL 4626089.

In general, I found the contemporaneous medical records to be more reliable than the testimony of Mr. and Ms. Hashi. Ms. Hashi seemed unsure of when precisely her cousin experienced changes in her development. Mr. Hashi merely insisted that all of the medical records that conflicted with his testimony were inaccurate and that, although S.H.'s problems began before she received the vaccinations in question, they worsened immediately thereafter. His assertions are not supported anywhere in the medical records.

The best summary of S.H.'s development was provided by Dr. Becker several years after S.H. received the vaccinations in question, when she was approximately seven years old. In late 2009, Dr. Becker described S.H.'s "pattern of neurodevelopmental progress" as "some loss of skills followed by a gain and then a loss again." Pet. Ex. 3, p. 20. I concur with Dr. Becker's assessment—S.H.'s development has been marked by periods of brief improvement followed by regression.

Ultimately, I found that S.H.'s behavior and health did not significantly decline after she received the January 2007 vaccinations. In the months following the allegedly aggravating vaccines, S.H.'s health remained much the same as it had been for the previous several months—she spoke few words, ground her teeth, displayed sensitivity to noise, and was profoundly developmentally delayed. Therefore, I determined that S.H. did not experience a significant deterioration in her behavior or health in the months immediately following her January 2007 vaccinations.

Based on these facts, it would have been very difficult for petitioners to find an expert willing to opine that S.H.'s January 2007 vaccinations significantly aggravated her condition. Petitioners were given 60 days to identify such an expert; instead, petitioners' counsel filed an untimely status report indicating that she had been unable to communicate with her clients about how to proceed. Pet. Status Report, filed Aug. 1, 2015.

## II. Failure to Comply with Court Orders

Under the Vaccine Rules, I am empowered to dismiss any petition for "failure of

the petitioner to…comply with…any order of the special master or the court." Vaccine Rule 21(b)(1).  Petitioners were warned that no extensions of time would be granted in this matter, given the posture of this case, post-fact rulings.  *Hashi,* 2015 WL 4626089 at *15.  After being ordered to *identify an expert witness* by no later than July 31, 2015, petitioners' counsel untimely filed a status report requesting additional time to *contact her clients*.  Petitioners' counsel did not indicate whether she had approached any potential expert witnesses about their willingness to opine based on the June 2015 fact ruling.  Any further delay is inexcusable.  Under these circumstances, a dismissal for failure to comply with court orders is appropriate.

The petition for compensation is therefore DENIED.  The clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

**s/Denise K. Vowell**
Denise K. Vowell
Chief Special Master
